A Star Group v. Northland Energy May it please the court, Brian Ginsburg for A Star. I'd like to focus today on the fraudulent, the claim for fraudulent inducement of the settlement agreement. That claim is not duplicative of the claim for breach of the settlement agreement. Plaintiffs were induced into the settlement agreement by, among other things, defendant's representations of present fact, JA 183 to 184, namely the statement that at the time of the agreement, neither Northland nor Hedge, quote, has in their possession, present tense, any relevant Time Metrics software, as well as the statement, again, made at the time of the agreement, that Northland and Hedge, quote, are not using, present tense, any strategies learned from the trading recommendations from the Time Metrics software. These misrepresentations of present fact are collateral under New York State law, as explained in the wild case, WYLE, that Judge Viscasso cited below. That case says, quote, a misrepresentation of present fact is collateral to the contract and therefore involves a separate breach of duty, close quote, from the misrepresentations as to future performance. The case further says that as the, excuse me, that the fact that the misrepresentation happens to be recited in the same contract in which those future promises are recited, quote, is of no consequence to the collateral nature. But even if the court isn't with me. Is it, so it is the same basis you're, you're, you're claiming the fraudulent indiscipline clause is the same as the basis for the contract breach claim, right? No, that's not, it's not entirely coextensive, Your Honor. The contract breach claim is based in addition on the future promises in the contract. What Northland and Hedge promised they will not do and shall refrain from in the future. What I'm telling you, Your Honor, and what the WYLE case from the First Department that Judge Viscasso cited below is that the representations of what at the time of the agreement were present facts, namely that Northland and Hedge, again, flashback to that point in time, are not using the software and do not. This is a warranty, a warranty of sort. We are not presently using the software. Yes, that's exactly right. And under New York law, that's distinct from promises of future performance. But even if the court is not with me on that point, still at paragraphs 112 to 117, plaintiffs allege that they were also induced by defendants prior misrepresentations. Namely, misrepresentations on May 2nd, 4th, 6th, 8th, and 9th, leading up to the settlement agreement which was executed that same day, in phone calls with Ms. Coumaron and in person, that the defendants did not have plaintiff's IP and were not illicitly using it. I see my time is running short, so I would ask that the district court's decision be reversed, the complaint reinstated, and at the very least, my client ASTAR should be given leave to amend and file what would be effectively its first fully counsel complaint. A complaint actually prepared and signed by counsel in this case. Thank you, your honors. Thank you, may it please the court, my name is Samantha Coumaron, it's a privilege to be up here today. I've been an entrepreneur in the city for 20 years, 30 years, and I've had to learn the law in order to be able to present this. I would like to focus today on the Defend Trade Secrets Act. I have invented substantial advanced algorithms in IP, and the district court order should be reversed specifically as it erred in law under the section 1835, where I specifically filed a preliminary injunction and protective order outlining at least three categories of trade secrets, which the magistrate judge did in fact grant, and that statute is specific. The language is clear that once a plaintiff has identified categories of trade secrets and made a motion to request they could refile under seal, the court should and must allow that to happen. And given that the protective order was granted, that was clear and reversible error. The cases cited to by the defendants also say the same thing, that once a protective order is granted, at the very least, a district judge should have allowed me to refile under seal. There's also a case by Honorable Louis Stanton, Dardashtian versus Gitman, where a similar ruling was heard that once a protective order has been granted, that was actually more than sufficient to meet the notice pleading standards under the Defend Trade Secrets Act. In addition, I'm asking this court respectfully to uphold Judge Freeman's order. There were two specific categories of trade secrets pled in the section 2E and 2G. Under the notice pleading standards of the Defend Trade Secrets Act, the standard is knew or should have known. Here we have facts specific to the relationship with Northland that they signed several contracts specifically agreeing that they knew or should have known, because of the telemetric software, the risk management processes, and the trades were trade secrets. Since they signed those binding contracts, it should be not permissible by this court for them to walk back that they did not know or should have known. In addition, they've argued to this court in their own pleadings, JA443, that their own book management models and trading models are trade secret. And those were alleged to have been duplicated from my own, so they can't now on one hand say that they are trade secrets and then claim they didn't know or should have known. In addition, there was adequate pleading in the complaint to identify the trade secrets. Under the Defend Trade Secrets Act standards, there's only really two main criteria. One, that the plaintiff has taken measures to keep information secret. And second, that it derives independent economic value. All these pleading standards were met. If you look at the paragraph 1749-51-128, it was in detail explained the cost of development, substantial cost, years, 20 years of cost and expense. Paragraph 675-58, using the export connect, that the Northland and Larkin had struggled for years to develop that. And in addition, that they had identified the trade secrets in the contracts, both the software license agreement and in the NDA. And that the technology were used in interstate commerce. And next, there's very specific holdings in this district that once a plaintiff has also itemized that they have provided the defendant with detailed descriptions of the technology, such as the next communications, Powell's, Isentium, transformation methodologies for displaying data, graphical visuals, that was sufficient fact in the complaint itself. For example, paragraph 76 to 77, paragraph 56, paragraph 173, that put the defendants on adequate notice, at least for a motion to dismiss standard of what the IP was. And you've reserved one minute of rebuttal. Did you want to use it now, or do you want to continue to reserve it? I'll use it for rebuttal. I know there's a lot that I wanted to say, I appreciate it.  Good morning, may it please the court. Michael Kwan on behalf of the Powellese. In two very well reasoned, thoughtful decisions, the lower court dismissed the amended complaint, which was plaintiff's second opportunity to plead its claims in totality with prejudice. All of plaintiff's claims that relate to conduct that occurred before the settlement agreement of May 2016 were released by broad releases under that settlement agreement. Now, plaintiff for counsel for ASTAR argues that there was no fraud, or that that release was fraudulently induced, and that the representations and warranties are somehow collateral to the agreement, but that cannot possibly be so. Because the actual representations and warranties, both in the present tense and the future tense, that the defendants do not have the plaintiff's alleged software and will not use it. Those are embodied expressly within the contract. So, as the lower court correctly found, those representations and warranties cannot possibly be considered extraneous to or collateral to the settlement agreement. That was relying on this Project Cricket case? Yes, Your Honor, yes. But wasn't that decided under Delaware law? I don't know offhand, Your Honor. But just looking at the actual allegations in this case, regardless of whether we're applying Delaware law or New York law, the claim of fraudulent inducement is based on allegations that told Ms. Kumaran that they don't have her software and that they will not use it in the future. Those very representations were then memorialized in the settlement agreement. And so, at best, she has a breach of contract claim for breach of the settlement agreement. But as the district court correctly found, her breach of the settlement agreement claim was waived because she never gave notice of the alleged- In a polite manner, because New York law, I think, is a little bit murkier on this, and your friend cited the Weil case, and that cited our Merrill Lynch case, where there is some suggestion that you can have both a contract and fraudulent inducement claim based on the same misrepresentations if they're alleged misrepresentations of what is present in fact. Yeah, so in this court's Merrill Lynch case, the court did hone in on the fact that the representations were of a present fact. But in the settlement agreement here, there's a mix of both present facts, as in I do not presently have your software, and future- So that's the fraudulent inducement allegation. You said you didn't have this, but you did, you lied to me. And then the future warranty is you're not going to use this to make the OTP book, but you did, and that's a breach of the contract. So why can't I have both? Because those two are interstricably intertwined. I can't possibly be using the software in the future if I didn't have it to begin with. So I understand the distinction that your honor is making, and I understand that it may be a close call. But again, because these representations were embodied in the very settlement agreement itself, both in the present tense and the future tense, it's our position, we submit that those representations could not possibly be collateral to our exchanges to the settlement agreement. And therefore, there was no fraudulent inducement. If I may, I'm sorry, I see that I'm out of time. Thank you. Thank you very much. If you may please the court, I'd like to respond to all these arguments. First, opposing counsel is incorrect. There was fraudulent inducement, which is a separate claim. There were statements made prior to by Larkin. I would like to point out that Larkin individually is not a party to that contract, so the fraudulent inducement made by him individually, as per the asphalt green contract, is not relieved by the settlement. Second, the statements were made specifically on May 2nd, May 4th, May 6th, were not contained in the contract. There were separate statements, for example, that they'd reverted back to their old strategies, which were not in the agreement. Secondly, even if it was in the warranties, they have ignored the R, the present tense. So even if it was the Merrill Lynch case, Second Circuit does support our argument that fraudulent inducement is a second, so the release is void under law. Second, opposing counsel says that we breached the way of the breach. I disagree respectfully. All the cases they cited to in their papers were summary judgment cases. I object that there would have been several summary judgment analysis here. There were certainly many facts consistent with notice of the breach. 144 to 146 says that they were given notice to cure the breach. They attempted to cure the breach. There were some minor deficiencies that could have been easily corrected. And more importantly, there were very specific paragraphs 196 to 202, where it says on very specific dates, January 15th, February 14th, and I believe April, June 21st, where they were on notice of legal action. And they were asking me specifically to waive the breach. And those facts are certainly consistent with notice of a breach, and certainly should have been included. As a pro se, I was also told I could have a few new facts in the papers. I would have loved to have been able to amend, but a waiver is an intentional summary judgment, and then you can't use that at a motion to dismiss standard. And I can certainly say that there wasn't a waiver of this breach. There's nothing in this complaint that says very specifically, did not agree to waive any breaches. Thank you, I ask for two, vacate and move it. Thank you very much. And we will take the matter under advisement.